# IN THE U.S. DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| TOMMI RICHELLE CLYMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:23-cv-00069 |
| ) | **JURY TRIAL DEMANDED** |
| VECOPLAN, LLC, ) | |
| **)** | |
| Defendant. **)** | |

## COMPLAINT

COMES NOW the Plaintiff, Tommi Richelle Clymer, by counsel, and in support of her complaint against Defendant Vecoplan, LLC, states as follows:

### PARTIES

1. Plaintiff Tommi Richelle Clymer (hereinafter referred to as "Tommi" or "Plaintiff") is an adult resident of Morgan County, West Virginia.

2. Defendant Vecoplan, LLC. (hereinafter referred to as "Vecoplan") is a North Carolina corporation whose principal place of business is 5708 Uwharrie Rd, Archdale, NC 27263.

3. Defendant Vecoplan is in the business of developing, manufacturing, and marketing shredding and recycling technologies for the plastics, wood, paper, and waste industries throughout North America.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy herein exceeds the value of $75,000, and the controversy is between a citizen of West Virginia and a citizen of North Carolina.

{01420396-1 }

5. Venue is proper in this Court because the conduct complained of herein occurred in Winchester, Virginia.

**FACTS**

6. Plaintiff Tommi Clymer brings this Complaint regarding an incident that occurred on November 13, 2021, at the Trex Company plant in Winchester, VA, which resulted in the amputation of her right hand, as described herein. At the time of the incident sued upon, Tommi was an employee of Trex Company, working at the Winchester plant.

7. Trex turns recycled materials into wood-alternative composite decking and other outdoor materials.

8. In 2020, Defendant Vecoplan designed, manufactured, and sold two customized versions of its Horizontal VKH 650 Grinder, a plastics grinder, tailored to meet the needs of Trex. The purpose of these grinders was to grind previously formed Trex products that were unusable for whatever reason back into the small pellets that Trex used to form into its composite wood-alternative products.

9. Vecoplan produced the two grinders specifically for Trex, and one of these machines caused this incident, Vecoplan Horizontal VKH 650 Grinder #2, ID# 16888 030 ("Subject Grinder").

10. Both grinders that Vecoplan produced for Trex consistently failed to perform their specified functions. Tommi worked with the Subject Grinder for a month prior to the accident. In that time, the Subject Grinder jammed constantly, numerous times per shift.

11. The other VKH 650 Grinder that Vecoplan produced for Trex, positioned next to the Subject Grinder, was out of order at the time of the accident and had been for a significant time prior, at least but not limited to the entirety of the time Tommi worked with the Subject

{01420396-1 }

Grinder.

12.     Vecoplan was aware of the two Grinders' functional issues due to work orders and other correspondence from Trex, and knew or should have known that Trex employees were having to clear jams from the machines multiple times per shift.

13.     Tommi repeatedly unjammed the Subject Grinder without incident during her month working with it.

14.     To unjam the Subject Grinder, technicians first powered down the machine via kill switch circuit board on a nearby wall, then raised the hood of the Grinder's infeed roller via a manual hydraulic jack. The kill switch is supposed to cut power to the machine and stop the components, including the grinding wheels, from turning.

15.     The infeed roller's hood guard is equipped with an interlock device that automatically shuts off the Subject Grinder as the infeed roller's hood guard is raised. The hood guard interlock is also supposed to cut power to and stop the roller and grinding wheels.

16.     Tommi experienced no previous issues with the Subject Grinder's rotors in her month of frequently unjamming the machine.

17.     Tommi was in no way aware, and had no reason to believe, that the machine still presented a danger after (1) powering the machine down at the circuit board or (2) opening the infeed roller's hood.

18.     On November 13, 2021, at the Trex plant in Winchester VA, at approximately 2:30 AM, Tommi responded to a jam in the Subject Grinder.

19.     In response to the alarm indicating a jam, Tommi walked more than 45 feet to press the kill switch on the wall and then walked back to the Subject Grinder. Tommi understood that the kill switch button she pressed cut the power to both the Subject Grinder and its feeder

belt.

20. Tommi then used the hydraulic jack to manually open the machine, triggering the interlock device. The hood-raising process takes approximately 30 seconds.

21. When the Subject Grinder's teeth are spinning, the machine is very loud such that it is clearly audible even with double ear protection. The infeed roller's teeth are clearly visible, and their motion is visually obvious.

22. When Tommi opened the hood, the infeed rollers were not rotating and were in fact completely stopped.

23. The Subject Grinder was not making any noise to denote that any part of the machine was still operating or otherwise moving.

24. As she and other Trex employees had done hundreds of times before, Tommi next cleaned out the interior of the infeed roller area using a crowbar to un-jam stuck pieces and her hands to remove the debris from the roller area.

25. Next, Tommi began to clear a jam in the Rotor Drum, again using a crowbar to dislodge the jammed pieces and then removing those pieces with her hands.

26. The interior of the Rotor Drum is hidden from view by black vinyl curtains that hang down.

27. Tommi began clearing the jam from the edge of the curtain of the Rotor Drum.

28. As Tommi grabbed a piece of jammed decking, the piece was suddenly drawn into the Rotor Drum.

29. In a split second, before Tommi could pull it away from the piece of decking, her hand was also pulled into the Rotor Drum.

30. At all times relevant, Tommi was using and interacting with the machine in a way

that was known to, or at least reasonably foreseeable to, Vecoplan.

31. A reasonable user would expect that before the interior of the Rotor Drum can be accessed by the user—having both activated the kill switch and triggered the hood guard interlock—the infeed and grinding rotors would no longer be energized or present a danger to users clearing jams.

32. A machine that permits dangerous components, such as grinders, to remain hazardous even after a user has activated a kill switch and/or triggered an interlock is unreasonably dangerous and defective.

33. At the time of this incident, Vecoplan's grinder had no warnings informing users that the grinders or rollers remained energized or presented any danger even after having activated the kill switch and/or triggering the hood guard interlock.

34. As a result of the defective machine, Tommi's right hand was amputated and was unable to be saved.

## COUNT ONE
## NEGLIGENT DESIGN, MANUFACTURE, AND WARNING

35. Defendant Vecoplan owed Plaintiff a duty to use reasonable care in designing, manufacturing, assembling, distributing, marketing, selling and/or placing into the stream of commerce the Subject Grinder.

36. Defendant Vecoplan breached these duties and was negligent in the following acts or omissions:

    a. They negligently designed, manufactured, assembled, distributed, marketed, sold and/or placed in the stream of commerce the Subject Grinder in such condition that it was dangerous for its ordinary and foreseeable uses, in that it was not adequately guarded and did not warn and/or instruct users, including the Plaintiff, of its dangerous characteristics;

      b.      They negligently designed, manufactured, assembled, distributed, marketed, sold and/or placed in the stream of commerce the Subject Grinder in a manner such that it could not be operated safely;

      c.      They negligently placed into the stream of commerce the Subject Grinder in a manner so dangerous and inherently defective that users of the Subject Grinder could not appreciate the dangers associated with its use;

      d.      They negligently placed into the stream of commerce the Subject Grinder lacking warnings and instructions reasonably tailored to inform foreseeable users, such as the Plaintiff, of the risks associated with the machine, namely that it could still cause serious injury even after having been depowered through operation of the kill switch and/or interlock device; and,

      e.      They failed to otherwise use reasonable care in how they designed, manufactured, assembled, distributed, marketed, sold and/or placed in the stream of commerce the Subject Grinder for the conditions then and there existing.

37. Vecoplan's negligence as described herein directly and proximately caused the injuries of the Plaintiff.

## COUNT TWO
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTIBILTIY

38. Defendant Vecoplan held itself out as knowledgeable in the field of designing, manufacturing, assembling, distributing, marketing, selling and/or placing into the stream of commerce grinders such as the one in question.

39. Defendant Vecoplan, at all times material hereto, by and through the sale of the Subject Grinder, expressly and impliedly warranted to users, prospective consumers and to the public generally, including the Plaintiff and the Plaintiff's Employer, that the Subject Grinder was reasonably fit for its intended and reasonably foreseeable purposes.

40. Defendant Vecoplan breached the implied warranty of merchantability by defectively designing, manufacturing, assembling, distributing, marketing, selling and/or placing into the stream of commerce the Subject Grinder which was unreasonably dangerous for the use

{01420396-1 }

for which it was intended and other reasonably foreseeable uses.

41. The Subject Grinder was defective and unreasonably dangerous because it was designed and/or manufactured such that it remained hazardous to its users even after a kill switch had been activated and an interlocked guard had been accessed.

42. The Subject Grinder was defective and unreasonably dangerous because it failed to warn and/or instruct users, including the Plaintiff, of its dangerous characteristics when used in a reasonably foreseeable manner.

43. The unreasonably dangerous conditions existing in the Subject Grinder were present when it left the Vecoplan's hands and remained substantially the same until the date of Plaintiff's injury.

44. Vecoplan's breach of their express and implied warranties as described herein directly and proximately caused Plaintiff's injuries.

## DAMAGES

45. Defendant Vecoplan's conduct, breaches of warranty and negligence, as described above, directly and proximately caused the Plaintiff to sustain serious and permanent injuries. Tommi has suffered great physical pain, mental anguish, and severe disfigurement including amputation, and these injuries will continue to trouble her in the future; she has incurred substantial expenses for doctors and related care, and she continue to incur such expenses in the future. Without her dominant hand, she will lose earning capacity as well as other benefits from employment; and she is unable to perform all of the usual affairs and enjoy the experiences of a young woman her age, and will continue to miss out on enjoyable experiences for the rest of her life.

46. In addition to compensatory damages, Tommi is entitled to prejudgment interest

from November 13, 2021.

WHEREFORE, Plaintiff Tommi R. Clymer demands judgment against the Defendant for compensatory and punitive damages in an amount to be decided by the jury, plus prejudgment interest, and her costs in this behalf expended.

**PLAINTIFF DEMANDS TRIAL BY JURY**

                Respectfully submitted,
                **TOMMI R. CLYMER**
                  By Counsel

/s/ M. Bryan Slaughter
M. Bryan Slaughter, Esquire (VSB No. 41910)
E. Kyle McNew, Esquire (VSB No. 73210)
MICHIEHAMLETT
P.O. Box 298
310 4th Street NE, 2nd Floor
Charlottesville, Virginia 22902
(434) 951-7200; (434) 951-6464 Facsimile
bslaughter@michiehamlett.com
kmcnew@michiehamlett.com

*Counsel for Plaintiff*

{01420396-1 }